## STATE v. MARGARET LOUISE JONES.

127 N. W. (2d) 153.

March 13, 1964—No. 39,022.

*Llewellyn H. Linde* and *C. Paul Jones,* for appellant on appeal only.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction under which the defendant was sentenced to the women's reformatory for a period of not less than 5 nor more than 40 years on a plea of guilty to an information charging her with the crime of robbery in the first degree. The defendant asserts under authority of State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723, that the trial court was obligated to vacate her plea on the basis of the disclosure and testimony before sentencing. It is also asserted that her court-appointed counsel failed to properly advise her as to the law and examine with her whether she was actually guilty of the offense charged.

From the record it appears that the defendant was charged jointly with her reputed husband with having on July 17, 1962, "by means of force and violence" and "being then and there armed with dangerous weapons * * * a 45 Caliber Automatic Pistol" placed certain persons in fear of immediate injury to their persons and property and taking from them cash in the approximate sum of $77. The information further alleges that the defendants were "then and there aided by an accomplice actually present, each being aided by the other, with intent then and there had" to commit the offense of robbery in the first degree.[1] Counsel was appointed by the court for each defendant. Upon arraignment pleas of guilty were entered.

---

[1] Defendant was indicted under Minn. St. 619.42, which reads, together with § 619.41, as follows:

§ 619.41. "Robbery is the unlawful taking of personal property from the person of another or in his presence, against his will, by means of force or violence, or fear of injury, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force used is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking from the person of another constitutes robbery when it appears that, although the taking was fully completed without his knowledge, such knowledge was prevented by the use of force or fear."

From the record before us, which includes a signed statement given by the defendant to the police and a record of the court's examination, it appears that Margaret Louise Jones, age 23, married codefendant Raymond Lyle Jones on the west coast after a brief acquaintance. She had not secured a legal divorce from the latest of her previous husbands but assumed that the marriage was annulled. She and Raymond Jones set out for the East, supporting themselves with bad checks and by sale of a car which did not belong to them. They spent the night of July 16, 1962, on the Fernberg Road above Twin Lakes in Lake County, Minnesota. Early the next morning two men in an Oldsmobile drove up to the place they were camped, parked their car nearby, and went down the path to the river. Sometime later Raymond Jones followed them with a rifle intending to rob them. After he left, three more people arrived in a Chevrolet automobile. They parked their car and, after visiting with the defendant Margaret Louise for about 5 minutes, they proceeded down the path toward the river in the same direction the others had taken. It appears that the two men who had arrived in the Oldsmobile eluded Raymond Jones before he could rob them, so instead he robbed the three later arrivals as they came down the path. He took about $77 in cash and the keys to their car and then returned to where he and Margaret Louise had made camp. They then left the scene in the Chevrolet automobile. Raymond turned part of the money over to Margaret Louise on the way to Virginia, where they were arrested.

The asserted error is found in the proceedings before the trial court

---

§ 619.42. "Every such unlawful taking, if accompanied by force or fear, in any case specified in section 619.41, shall be robbery in the first degree:

"(1) When committed by a person armed with a dangerous weapon; or

"(2) By a person aided by an accomplice actually present; or

"(3) When the offender, in order to accomplish the robbery, shall inflict grievous bodily harm or injury upon the person from whose possession, or in whose presence, the property is taken, or upon his spouse, parent, child, servant, or member of his family, or any one in his company at the time—

"And shall be punished by imprisonment in the state prison for not less than five, nor more than 40, years."

after the defendant's plea of guilty but before sentence was imposed. The following appears from the record:

"Q. What about this hold-up situation? What happened at that time between the two of you?

"A. I don't know. I wasn't there. I was there up until the time he left, but I stayed up on the road, so I can't help you any.

"Q. By your car?

"A. No. What happened, we stayed on the Fernberg Road all night, the night before, and the next morning, about a quarter of six, I guess, a couple—two men in an Oldsmobile drove up, and they parked their car, and Ray asked them how far it was from there to Ely. This fellow said, 'About 12 to 15 miles,' something like that, and we didn't say any more, and they took off down this path or whatever you want to call it that goes down to the river, and I sat by the fire, and we both did for about ten minutes, and after that, Ray went down and followed them down. Then after they—both parties had left, why, somebody—three people in a '62 Chevrolet pulled up, two men and a woman, and I said, 'Good morning,' to the woman, and she sat there and talked to me for about five minutes, and then they followed Ray and the others down. I don't know what happened after that. I heard no shots.

"Q. Which car did you leave in?

"A. We didn't take the '53 Oldsmobile. We took the '62 Chevvy.

"Q. That's the last one that came along where you talked to the woman?

"A. Yes.

"Q. But in any event, you and your husband did leave together in this car?

"A. Yes, sir, we did.

"Q. And did you then know that he had secured money?

"A. No, I didn't know that.

"Q. You knew he was broke before?

"A. Yes, sir. Not quite; we had $20.00.

"Q. But he says he got $60.00 in this hold-up?

"A. . I didn't know. All I counted was $43.00 when he handed me the money.

"Q.  Where did he hand you the money?

"A.  Half-way between there and Virginia City.

"Q.  Then you continued down to Virginia?

"A.  Yes, sir.

"Q.  At which time you were arrested?

"A.  Yes, sir."

After the court imposed sentence upon the defendant, the following occurred:

"Mrs. Margaret Jones: I wasn't even there.

"The Court: These are what we call indeterminate sentences. I follow the language of the statute. Then the Department of Corrections is in no wise bound. They can release you at any time they desire. If I imposed a limited sentence, for instance, ten years, or even five years, they would interpret that as my conclusion that you should serve that ten-year period. In other words, under five to forty, you will probably serve less time than you would under a straight ten or fifteen year sentence. You are not being charged with your priors. Under our law, if Mr. Jones had charged you with your prior convictions in California, you would take ten to eighty. The reason for the severe penalties for this type of crime is the danger to human life involved in armed robbery. This is the most serious offense under our law.

"Mrs. Margaret Jones: I wasn't even there. God help me, I wasn't even there.

"Mr. Emmett Jones [county attorney]: One more comment: There is no way we can assure these people that they will not be charged in other states for these other crimes.

"The Court: This we have no control of, but they will not be charged here with their prior convictions."

While it may be assumed from the statements of the defendant that she was implicated in the offense as an accessory after the fact, or that she might have been charged with larceny of the Chevrolet automobile, it is obvious from her answers that she denied the commission of acts

which constitute the essential elements of the offense charged. She denied participation in, or knowledge of, acts in preparation of the alleged offense. It should have been apparent to her counsel that she did not understand the nature and seriousness of the offense with which she was charged, nor did she understand the meaning and consequences of her plea. The record manifests a want of proper representation by defense counsel since it was his obligation to call the court's attention to the fact that her statements were inconsistent with the plea of guilty, and he should have requested the court to vacate that plea and enter a plea of not guilty.

In State ex rel. Dehning v. Rigg, *supra,* we pointed out that where a defendant upon examination by the court, after plea of guilty, stated that he did not know whether he had the intent which was a necessary element of the offense charged, the court-appointed counsel should have intervened and asked the court for additional time for consultation with his client in order to ascertain whether the defendant's conduct had justified the guilty plea and to inform the client of his legal rights. We also pointed out that the attorney having failed to do so, the court, on its own initiative, should have directed the attorney so to do, and failure of the counsel or court to take such steps required granting a post-conviction application for a writ of habeas corpus. The Dehning case was followed in State ex rel. Grattan v. Tahash, 262 Minn. 18, 22, 113 N. W. (2d) 342, 344, where, under a somewhat analogous fact situation, we said:

"* * * [A]fter the disclosure of the facts by the presentence examination, counsel should have requested a withdrawal of the plea of guilty, as such facts fairly disclosed that accused had no intent to commit the felony. Neither should the court have accepted the plea of guilty after a knowledge of the claimed facts."

Moreover, it should have been apparent here that upon the disclosure made by the defendant, she could not be implicated as a principal under Minn. St. 610.12,[2] which abolishes the distinctions between prin-

---

[2]Minn. St. 610.12 provides: "Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense,

cipals and accessories before the fact. Under that section of the statute, the defendant would not have had to be present at the scene of the robbery to be guilty of the offense if she had aided or abetted in its commission or otherwise directly or indirectly counseled or encouraged the commission of the crime.

We agree with counsel for the defense that on the basis of the record as it appears here there could be no participation on the part of the defendant in the alleged offense since the victims arrived at the scene after Raymond Jones had followed the first arrivals down the path.

It is well recognized that a plea of guilty, which is a confession in open court, should be received with caution. This is particularly true as it applies to the graver felonies. The plea should not be entered where it is made by one who has not been advised of the nature and elements of the offense charged; nor should the plea be induced by misapprehension or ignorance. No plea should be accepted where it appears doubtful that it is not made intelligently and understandingly. 14 Am. Jur., Criminal Law, § 270; Pittman v. State, 198 Miss. 797, 23 So. (2d) 685; People v. Ross, 409 Ill. 599, 100 N. W. (2d) 923.

The trial judge stated his impressions of the defendant, apparently pursuant to the provisions of Minn. St. 243.49, as follows:

"* * * My observations would indicate a highly unstable person of very poor judgment who is probably in need of psychiatric and psychological examinations and possibly treatment. An indeterminate sentence was imposed to allow maximum latitude in dealing with the problem which she presents. * * * [S]he has no connections in this area, and any plans for her release would necessarily involve her placement in some of the Pacific Coast states where her origins are. It would appear unlikely that alone she would constitute a real danger to anyone but herself and possibly the daughter whom she states she has given to a girl friend."

---

or aids and abets in its commission and whether present or absent, and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal, and shall be indicted and punished as such."

It may well be true, as the trial court assumes, that the Adult Corrections Commission would work out a disposition by parole or otherwise which would be fair and to the best interests of the defendant and society. We cannot overlook, however, the fact that the defendant is confined as one under sentence for a period of 5 to 40 years for commission of one of the most serious felonies. On the basis of the record we think there is sufficient doubt as to the genuineness of her plea to require further examination of the defendant as to her knowledge and understanding of the nature of the offense with which she was charged. In her present status she may serve a sentence beyond the just requirements of the actual culpability of her conduct. It should be kept in mind that whatever clemency is exercised will be by grace of the commission and not as a matter of right. We accordingly conclude that the plea of guilty should be vacated and the case remanded to the district court for further proceedings.

Remanded.