**STATE of Iowa, Appellee,**

v.

**Thomas Eugene SISCO, Appellant.**

**No. 53349.**

Supreme Court of Iowa.

July 24, 1969.

Michael J. Sexton, Ames, for appellant.

Richard Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., Charles E. Vanderbur, County Atty. and William Gibbons, Asst. County Atty., for appellee.

RAWLINGS, Justice.

Defendant, Thomas Eugene Sisco, found guilty by trial court on his plea of guilty to rape, (section 698.1, Code, 1966), as charged by county attorney's information, was sentenced to ten years in the Men's Reformatory at Anamosa.

On appeal from that judgment defendant contends, in urging reversal, the court erred in failing to ascertain, before judgment, the guilty plea was entered, (1) voluntarily; (2) with an understanding of the charge; and (3) with knowledge of the penal consequences of the plea. We reverse.

Defendant is one of nine children, and at age 14 was committed to the Iowa Training School for Boys.

Psychological testing disclosed he had an I.Q. of 84, with a 5.3 grade equivalent.

Ultimately defendant was assigned to the Nevada Half Way House. He and Mrs. Groth, the rape victim, became acquainted during her visits at that institution, Mr. Groth being there employed.

February 4, 1968, defendant, apparently without permission, went to the Groth home in Ames where, it is charged, the offense with which we are here concerned was committed.

Subsequent to arrest of accused, counsel was assigned to represent him. On request, trial court ordered a psychiatric examination of defendant. The resultant report states, in material part:

"Our diagnosis is sociopathic personality disorder, antisocial reaction. This diagnosis is based on our interviews with the patient, observation of his behavior while in the hospital and psychological testing. We find no evidence of any psychiatric problem other than the above diagnosis. Sociopathic personality disorder, anti-social reaction, refers to individuals who are always in trouble, profiting neither from experience nor punishment, and maintaining no real loyalties to any person, group, or code. They are frequently callous and hedonistic, showing a marked emotional immaturity, with lack of sense of responsibility, lack of judgment, and an ability to rationalize their behavior so that it appears warranted, reasonable, and justified. This is a disorder which has been found not to benefit from psychiatric treatment.

"We find no evidence of brain damage on the basis of neurological examination and electroencephalogram. We furthermore find that this individual can distinguish the difference between right and wrong, recognize the consequences of his behavior and is competent to stand trial and cooperate with his attorneys in his defense. We do not advise further hospitalization or psychiatric treatment for this individual because his particular diagnosis has been found not to respond to psychiatric treatment and we furthermore find no evidence of other psychiatric problems in this individual."

April 8, 1968, defendant appeared with counsel before trial court for arraignment.

Approximately 35 pages of the record before us are devoted to a presentation and court-counsel discussion of the factual situation here involved.

Among other things, however, defendant's assigned counsel stated to the court at one point: "Your Honor, I have a defendant who was 16 years old at the time he committed this crime. He is now 17 years of age, turning 17 in March. I have made recommendation to the defendant, in view of the facts of the case, that he enter a plea of not guilty. The defendant, after several conferences—and of course he has had considerable time to think about this matter since he has been confined, since arrest—has unequivocally made up his mind apparently to enter a plea of guilty. And at the request of the defendant and at his direction, I enter a plea of guilty to the charge contained in the county attorney's information. We will waive the three-day waiting period for sentencing, and ask that sentence be pronounced immediately, if that is the desire of this Court. However, Your Honor, prior to sentencing being pronounced I would like to make a statement on behalf of the defendant."

This attorney then concluded with this comment: " * * * Mr. Sisco is competent to stand trial, according to the report. He recognizes the consequences of his behavior; and I guess he feels—with the report— competent to make a decision in this case. He has made it, but I felt the Court should know the circumstances of the case. I'm not looking strictly at his background, which isn't—it is enlightening but I don't suppose it's that beneficial—but so Your Honor can be fully aware. The facts of this crime have bothered this attorney, but the decision of the defendant is final and he has made it. And so that's all I have, Your Honor."

Thereupon trial court, for the first time, addressed defendant personally, and, to the extent here relevant, this followed:

"THE COURT: Well, will you rise, Mr. Sisco. Do you have anything more you would like to tell me?

"MR. SISCO: No, Your Honor.

"THE COURT: Is it your desire to plead guilty?

"MR. SISCO: Yes.

"THE COURT: Do you plead guilty?

"MR. SISCO: Yes, Your Honor.

"THE COURT: Do you have any reason why sentence should not now be pronounced?

"MR. SISCO: No, sir.

"THE COURT: Well, it will be the sentence of the Court that you be confined in the Men's Reformatory at Anamosa, Iowa, ten years, and that you pay the costs of the prosecution. And your appeal bond, if you desire to appeal, will be $2,500.00."

It is at once evident the question presented on this appeal does not go to the matter of guilt or innocence. Rather, we are here called upon to determine whether a guilty plea may be accepted and judgment entered thereon, absent any prior determination by trial court, the defendant understands both the charge made against him and criminal consequences of a guilty plea, and that it is voluntarily entered.

I. As stated in Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 583, 71 L.Ed. 1009: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. *Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.* When one so pleads he may be held bound. United States v. Bayaud (C. C.) 23 F. 721. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence." (Emphasis supplied).

In the same vein this court held in State v. Krana, Iowa, 159 N.W.2d 413, 416: "The rule is now clear that if a defendant, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty, enters such a plea understandably and without fear or persuasion, the court may without abusing its discretion refuse to permit its withdrawal. State v. Bastedo, 253 Iowa 103, 111, 112, 111 N.W.2d 255, 260; 21 Am.Jur.2d, Criminal Law, section 505, pages 497, 498; Anno. 66 A.L.R. 638." See also Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473; State v. Delano, Iowa, 161 N.W.2d 66, 72; and State v. Vaughn, Iowa, 159 N.W.2d 447, 448.

II. Furthermore, it appears most courts now hold, even in the absence of a statute or rule so directing, sentencing judges, before accepting a guilty plea, must first determine it is voluntarily entered, with an understanding of the charge, knowledge of the criminal consequences, and there exists a factual basis supporting it. See editor's statement, 97 A.L.R.2d 549, 552.

At the outset we refer to McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. Although the court was there dealing primarily with Rule 11 of the Federal Rules of Criminal Procedure, it gave voice to some constitutional standards inherent in that rule, as demonstrated by this statement, loc. cit., 89 S.Ct. 1170–1171: "* * * the Government argues that since petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the District Court 'could properly *assume* that petitioner was entering that plea with a complete understanding of the charge against him.' (Emphasis added.)

"We cannot accept this argument, which completely ignores the two *purposes* of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a

complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

"Prior to the 1966 amendment, however, not all district judges personally interrogated defendants before accepting their guilty pleas. With an awareness of the confusion over the Rule's requirements in this respect, the draftsmen amended it to add a provision 'expressly requiring the court to address the defendant personally.' This clarification of the judge's responsibilities quite obviously furthers both of the Rule's purposes. *By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack.*

*"These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'* Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.*

" * * * The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'

"To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the district judge resorts to 'assumptions' not based upon recorded responses to his inquiries." (Emphasis supplied.)

Also, as United States ex rel. McCloud v. Rundle, (3 Cir.) 402 F.2d 853, 857–858, states: "In the absence of an adequate record indicating that the trial court has properly ascertained whether a guilty plea was knowingly and voluntarily entered, it is incumbent upon the federal habeas corpus court to make this determination on the basis of all the relevant facts and circumstances. In this connection, it should be pointed out that the *strong presumption of constitutional regularity which attaches to a state court conviction* when collaterally attacked, *may be overcome where there is no record of the state court proceedings or where such a record does exist, but shows that the trial court did not properly question the defendant on accepting his plea. Although the federal standards for determining the voluntariness of a guilty plea have not as yet been imposed upon the state courts:* it is nonetheless significant that under Rule 11 of the Federal Rules of Criminal Procedure of Criminal Procedure, even prior to its amendment in 1966, the burden of proof did in fact shift to the

Government where the terms of the rule were not complied with. Prior to 1966, Rule 11, required only that 'the court * * * shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. * * *' *This standard would appear to be nothing more then the constitutional mandate as enunciated by the Supreme Court in Kercheval v. United States.* [274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009]" (Emphasis supplied).

Recently we voiced approval of the foregoing in State v Rife, Iowa, 149 N.W.2d 846, 848, with this statement: "The better procedure in accepting a plea of guilty, as found in Rule 11, Federal Rules of Criminal Procedure, is that *courts should not accept a plea of guilty without first determining that it is made voluntarily and with an understanding of the charge and the possible penalty involved.* It is quite clear, if the prosecutor induces a plea by empty promises of leniency, or if the judge threatens to impose the maximum sentence upon a conviction after trial, the plea is involuntary and any judgment based thereon is void. State v. Bastedo, supra [253 Iowa 103, 107, 111 N.W.2d 255]; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)." (Emphasis supplied.)

Also, in State v. Lampson, Iowa, 149 N.W.2d 116, 121, this court said: "'The formal requisites for a plea of guilty in this state are set out at section 777.12, Code, 1966. In connection therewith this court has said in State v. Kellison, 232 Iowa 9, 14, 4 N.W.2d 239, 242: "In the first place, such a plea must be entirely voluntary and not induced by fear, by misrepresentation, by persuasion, by the holding out of false hopes, nor made through inadvertence or by ignorance, 22 C.J.S. Criminal Law § 423 [p. 653]. And the court should satisfy itself of the voluntary character of the plea before accepting it, especially where accused is not represented by counsel and is young and inexperienced or obviously lacking in intelligence or knowledge of our spoken language. 22 C.J.S. Criminal Law

§ 423 [p. 653]." ' State v. Kulish, Iowa, 148 N.W.2d 428, 432, filed February 7, 1967." See also State v. Cooper, Iowa, 161 N.W.2d 728, 731, and Brewer v. Bennett, Iowa, 161 N.W.2d 749, 751.

In line herewith the American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, Approved Draft, provides in pertinent part:

"1.4  Defendant to be advised by court.

"The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

"(a) determining that he understands the nature of the charge;

"(b) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury; and

"(c) informing him:

"(i) of the maximum possible sentence on the charge, including that possible from consecutive sentences;

"(ii) of the mandatory minimum sentence, if any, on the charge; and

"(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment.

"1.5  Determining voluntariness of plea.

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence conces-

548

sions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea.

"1.6 Determining accuracy of plea.

"Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea."

Briefly stated these standards are, in essence, an exemplification of Rule 11, Federal Rules of Criminal Procedure.

The following authorities lend additional support to the foregoing conclusions. Fultz v. United States, (6 Cir.) 365 F.2d 404, 408; United States v. Davis, (7 Cir.) 212 F.2d 264, 267; State v. Kellison, 232 Iowa 9, 14–15, 4 N.W.2d 239; Martinez v. People, 152 Colo. 521, 382 P.2d 990, 991; People v. Taylor, 9 Mich.App. 333, 155 N.W.2d 723, 725–727; State v. Jones, 267 Minn. 421, 127 N.W.2d 153, 157; Caves v. State, 244 Miss. 853, 147 So.2d 632, 633; State v. Blaylock, Mo., 394 S.W.2d 364, 366; People v. Seaton, 19 N.Y.2d 404, 280 N.Y.S.2d 370, 371–373, 227 N.E.2d 294; State v. Harrell, 40 Wis.2d 187, 161 N.W.2d 223, 226–227; 22 C.J.S. Criminal Law § 423(3) (4), pages 1181–1186; 21 Am.Jur.2d Criminal Law, sections 486–487, pages 477–479; and Annos. 97 A.L.R.2d 549.

■ We now adopt the American Bar Association Minimum Standards for Criminal Justice, quoted supra.

This does not mean a determination by trial courts of the matters here involved requires any ritualistic or rigid formula be fixed upon or followed. There must, however, be meaningful compliance with these guideline standards.

III. Neither does presence of and statements by counsel for defendant at the time a guilty plea is entered serve to change or alter the above holding.

■ In other words, a sentencing court may not abrogate or delegate to anyone, including attorney for accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or existence of facts supporting it.

This is clearly the holding in United States ex rel. Codarre v. Gilligan, (2 Cir.) 363 F.2d 961, involving a habeas proceeding brought by a 13 year old state prisoner. There the accused was asked by trial court, prior to sentencing, if he acquiesced in a guilty plea entered by his attorney and the answer was, "I will take the one that Mr. Dow said." In reversing a prior denial of the writ, the court stated at page 965: "The fact that Codarre [petitioner] had court-appointed counsel who recommended pleading guilty is not conclusive. *Codarre himself must have made a reasoned choice.* See Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (April 19, 1966); Kotz v. United States, 353 F.2d 312, 314 (8th Cir. 1965); cf. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Whitus v. Balkcom, 333 F.2d 496, 502–503 (5th Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). *In Brookhart v. Janis, supra 384 U.S. at 6, 86 S.Ct. at 1248, the Supreme Court held that the 'constitutional rights of a defendant cannot be waived by his counsel' where 'petitioner [himself] did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea.'*

*"We believe that New York had an affirmative duty to surround this thirteen-year-old boy charged with a capital offense with every reasonable protective measure, and particularly to provide a procedure that would assure that he would make a reasoned choice* when confronted with the alternatives of pleading guilty to second degree murder or facing a possible death penalty. See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The pro-

cedure provided offered insufficient protection." (Emphasis supplied.)

And in United State ex rel. Thurmond v. Mancusi, (D.C.) 275 F.Supp. 508, another habeas case, the court in vacating a state court judgment of conviction, and remanding, said at page 519: "A searching inquiry by the court at the time the defendant enters his plea is the most reliable and efficient means of determining whether the defendant fully understands the nature of the commitment that has been made to him. Such an inquiry by the judge accepting the plea has the value of permitting the defendant to reevaluate his position before throwing himself on the court's mercy. (Authorities cited).

"In this case, the trial court did not conduct an inquiry to determine whether petitioner's plea was voluntary. There was no 'penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.' Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). See Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y. 1966). 'A mere routine inquiry—the asking of several standard questions—will not suffice to discharge the duty of the trial court.' United States v. Lester, 247 F.2d 496, 499–500 (2d Cir. 1957): *The fact that defendant was represented by counsel did 'not relieve the court of the responsibility of further inquiry.'* Id. at 500. See United States ex rel. Codarre v. Gilligan, 363 F.2d 961, 965 (2d Cir. 1966).

"Judicial notice of tensions surrounding acceptance of pleas makes it impossible to decide without a hearing that defendant understood the significance of the District Attorney's statement for the record that no promise was made. But even if the defendant did hear and did comprehend, his failure to challenge when his attorney stood mute is not conclusive evidence of acquiescence.

" 'If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel * * * [the defendant] would no more challenge that statement in open court than he would challenge a clergyman's sermon from the pulpit.' Trebach, The Rationing of Justice 159–60 (1964)." (Emphasis supplied.)

Finally on the subject at hand we refer again to this statement in McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 1171: "By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack."

See also sections 1.4 and 1.5, American Bar Association Standards Relating to Pleas of Guilty, quoted supra; Fultz v. United States, (6 Cir.) 365 F.2d 404, 408; People v. Taylor, 9 Mich.App. 333, 155 N.W.2d 723, 725; Woods v. Rhay, 68 Wash. 2d 601, 414 P.2d 601, 604; State v. Harrell, 40 Wis.2d 187, 161 N.W.2d 223, 227; State ex rel. Burnett v. Burke, 22 Wis.2d 486, 126 N.W.2d 91, 95–96; and editor's statement, 97 A.L.R.2d 549, 556.

We are persuaded and now hold, when a guilty plea is entered by defendant, the court must address the accused personally and by that procedure heretofore prescribed determine whether he understands the charge made, is aware of the penal consequences of the plea, and that it is entered voluntarily. Nothing less will suffice.

IV. It is also evident a record of the proceedings directed, supra, should be made and preserved.

In this regard section 1.7 of the American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, approved Draft, provides:

"1.7 Record of proceedings.

"A verbatim record of the proceedings at which the defendant enters a plea of guilty

or nolo contendere should be made and preserved. The record should include (i) the court's advice to the defendant (as required in section 1.4), (ii) the inquiry into the voluntariness of the plea (as required in section 1.5), and (iii) the inquiry into the accuracy of the plea (as required in section 1.6)."

That precept is also supported in McCarthy v. United States, and United States ex rel. McCloud v. Rundle, both quoted supra.

■ Again we look favorably upon and adopt the provisions of section 1.7, American Bar Association Minimum Standards for Criminal Justice, quoted above.

V. As heretofore disclosed, trial court did make thorough inquiry regarding the facts attendant upon the crime with which defendant stood charged.

However, it is also apparent no effort was made, after entry of the guilty plea and prior to judgment, to ascertain whether defendant understood the charge, the legal consequences of his plea, or that it was voluntarily made.

Admittedly defendant's attorney told the court his 17 year old client "recognized the consequences of his behavior."

But this is a far cry from an expressed understanding of the penal consequences of criminal conduct. The accused, in talking to his attorney, may have meant he knew his conduct was morally wrong, or even that it constituted a violation of the law. That is hardly the equivalent of an understanding of punishment which may be administered upon entry of a plea of guilty to the serious offense here charged.

Furthermore, as above stated, sentencing courts cannot delegate to defense counsel the right or duty to ascertain a defendant's understanding of an unlawful act or its legal consequences any more than it can assign the task of determining voluntariness of a guilty plea. That is a matter to be determined by the court alone after an informative and meaningful personal discussion with the accused in open court.

■ VI. Citing State v. Whitehead, Iowa, 163 N.W.2d 899, 903, the state argues defendant's guilty plea should not be set aside because he has not at any time alleged innocence.

That argument ignores the factual situation here presented. State v. Whitehead, supra, involved an application for leave to withdraw a plea of guilty after judgment and sentence.

No such application is before us at this time. And, as noted above, we are not now concerned with guilt or innocence, defendant's appeal from final judgment being directed only to the matter of sentencing procedure.

It is thus evident State v. Whitehead, supra, is here neither factually comparable nor controlling.

VII. Moreover Boykin v. State of Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, 5 Cr.L. 3079, in effect, accords substantial support to the conclusions set forth supra.

There an indigent defendant, charged with five counts of robbery, appeared in state court, with appointed counsel, and entered guilty pleas to the offenses charged.

So far as disclosed by the record the presiding judge asked no questions of accused concerning his plea, and sentence was ultimately imposed.

Defendant appealed but the Alabama appellate tribunal denied relief. Thereupon the United States Supreme Court granted certiorari, and in reversing said: "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. * * *

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and

determine punishment. See Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009. Admissibility of a confession must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.' Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786, 12 L.Ed. 2d 908. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought. (Garner v. Louisiana, 368 U.S. 157, 173, 82 S.Ct. 248, 256, 7 L.Ed.2d 207; Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed. 2d 326), and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

"The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.' 281 Ala. [659], at 663, 207 So.2d [412], at 415."

VIII. In fairness to trial court it must be conceded we have never heretofore held the sentencing procedures set forth above are obligatory.

On the other hand, as previously disclosed, it has been recommended, on at least four prior occasions, the foregoing procedures be followed. See State v. Cooper, Iowa, 161 N.W.2d 728, 731; State v. Rife, Iowa, 149 N.W.2d 846, 848; State v. Lampson, Iowa, 149 N.W.2d 116, 121; and State v. Kellison, 232 Iowa 9, 14, 4 N.W.2d 239.

We now hold substantial compliance with the standards set forth in this opinion is mandatory in all indictable misdemeanor and felony cases where a plea of guilty is entered by an accused.

Manifest justice dictates, however, they be held applicable in the case at bar, as in Boykin v. State of Alabama, supra.

■ We accordingly reverse and remand with instructions, the judgment of conviction and sentence heretofore entered in this case be set aside, and for further proceedings.

Reversed and remanded with instructions.

MASON and BECKER, JJ., concur.

LeGRAND and LARSON, JJ., concur specially.

GARFIELD, C. J., and SNELL, MOORE and STUART, JJ., dissent.

LeGRAND, Justice (concurring specially).

I concur in the result, but only because I feel compelled to do so by reason of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, and Boykin v. Alabama, 89 S.Ct. 1709, 23 L.Ed.2d 274. Except for these recent United States Supreme Court decisions, I would have no doubt this defendant was accorded his full constitutional rights.

We reverse here because defendant's guilty plea was accepted by the trial court without first having ascertained it was (1) voluntary, (2) made with an understanding of the charge, and (3) made with knowledge of the penal consequences. It is interesting to note the defendant does not claim, nor do we find, the plea was *not in fact* voluntary, was *not in fact* made with an understanding of the charges, or was *not in fact* made with a knowledge of the penal consequences. The result, it seems to me, relegates substance to a subordinate position and insists upon pure formalism as a test for constitutional conformance.

Under our opinion in the present case it is now obligatory upon our courts to comply with rule 11, Rules of Federal Procedure. These provisions are fully discussed in the opinion. In the McCarthy case the Supreme Court announced the rule imposed no constitutional burdens and was nothing more than a court rule adopted for federal courts. Such rules, of course,—at least until now—are not binding on state courts.

However, the Boykin decision extends McCarthy far beyond its own plain tenets. Despite the limited holding in McCarthy, the Supreme Court in Boykin—just two months later—used that decision as a springboard for deciding a plea of guilty in a *state* court was constitutionally invalid unless *federal* rule 11 was complied with. There is nothing in the McCarthy opinion to justify this conclusion, and the two-judge dissent in the Boykin case forcefully points this out.

We are here adopting a mere ritual as an easy and pushbutton method of deciding in advance—without reference to the particular circumstances—when a plea of guilty fails to meet constitutional standards. I am fully aware the opinion announces that the formula used should not become "ritualistic", but despite this admonition the inevitable result is just that.

My objection is not to the standards imposed but rather to the method which the opinion says *must* be followed in order to demonstrate they have been met. This completely disregards the real issue: was the plea voluntary; was it made with the full knowledge of the consequences; and was it made realizing the punishment which could be imposed? Apparently this now becomes of trifling importance. The inquiry no longer is what did the defendant *know* at the time he entered his plea, but what did the trial court *tell* him at that time. Even if he were to be fully aware of every fact the trial court could point out, a defendant would under this opinion nevertheless be entitled to have his plea set aside *because his information did not come from a particular source.*

As recently as March of this year the United States Second Circuit Court of Appeals considered a similar problem in United States ex rel. Brooks v. McMann, 408 F.2d 823, 825. There it was claimed

the trial court had failed to warn a defendant he was subject to sentencing under the recidivist statute at the time his guilty plea was accepted. After conceding the defendant should be advised of the consequences of his guilty plea, the court said:

"But even if due process requires that an accused be aware of possible recidivist treatment prior to a judge's acceptance of the accused's plea *it should not always be necessary that such information be given the accused by the court for it is obvious that if the accused knew from any other source of the possible consequences to him of a guilty plea there would be no violation of due process if the court failed to convey the information.* In the present case Brooks does not allege in his habeas petition that he was ignorant of the consequences of his guilty plea; his only claim that due process was denied him is that he was not told of the consequences by the trial court.

"The circumstances here demonstrate that appellant knew the consequences that would follow after his plea. First and foremost, Brooks had counsel at each stage of the state criminal proceedings, and it is reasonable to assume that his counsel advised him of the consequences of his plea. Certainly the lack of any affidavit from his attorney that the attorney did not discuss these consequences with him weighs heavily against the petitioner." (Emphasis supplied.)

I consider that reasoning particularly applicable here. I also consider the result to be far more desirable, although it is doubtful if it can withstand the impact of the recent Supreme Court decisions already referred to.

I would subscribe to the principle a defendant who denies he voluntarily entered his plea, or who says he did so without understanding its consequences, is entitled to a hearing to settle that question. Here, however, defendant does not—even now—assert any such claim. It would seem

axiomatic that, if defendant is to be entitled to relief because he did not understand his rights, he should first allege he was in fact ignorant of those rights. Otherwise where is the harm?

Until the McCarthy and Boykin decisions this was the holding in at least some of the federal circuit courts throughout the country. The varying views are discussed in McCarthy and need not be repeated here. This has also been the rationale of the holdings of some of the state courts. For instance, see State v. Biastock, Wis. 167 N.W.2d 231, 235, which was decided after the McCarthy opinion but before the Boykin opinion, where the Wisconsin court said with reference to a plea of guilty, "Defendant was represented by counsel in the trial court. Therefore, in the absence of proof to the contrary, it must be assumed that counsel advised the defendant of all possible defenses."

The same assumption should be made here as to the advice counsel gave defendant. There is no claim he was not adequately represented. The record shows he was. The record further shows counsel, in the presence of the defendant, made a detailed statement to the court showing he had advised defendant on substantially all the matters which federal rule 11 requires. The opinion says that when counsel stated defendant understood the consequences of his act this may have meant only that "he knew his conduct was morally wrong or even that it constituted a violation of the law."

This appears to be a fanciful searching for unlikely possibilities for which there is no basis in the record. It has now been more than a year since the guilty plea was entered. He has had time to reflect upon and consider the plea he entered. He has at all times been represented by conscientious and diligent counsel. Yet he doesn't suggest his understanding of the consequences of his act was anything less than it appears to be or that his plea was involuntary.

There is nothing mysterious about the information an attorney gives a client who is considering what a plea of guilty means. As we said in State v. Cooper, Iowa, 161 N.W.2d 728, 730, "[E]ven a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses known and unknown."

If counsel says he advised his client of the consequences of such a plea, it involves no strain upon the imagination to assume this included telling him of his right to a jury trial with its built-in protections and of the punishment to which he is subject. Any other result attributes to counsel either stupidity or deceit, or both. A defendant should, of course, be permitted to charge his counsel practiced one of these arts upon him, but this court should not *assume* he did so.

Regardless of any other considerations and as an absolute minimum, I would insist defendant allege the absence of those conditions which we say must be present before his plea of guilty is valid. Having failed to do so, he is entitled to no relief. I find nothing in our previous decisions, all cited in the opinion, to the contrary.

The result reached, if justifiable at all, must be bottomed on the recent opinions of the United States Supreme Court. The dissent in Boykin points out, correctly I believe, that the decision there makes rule 11 "substantially applicable to the states as a matter of federal constitutional due process." That dissent further finds the result reached "bizarre." I believe ours is too.

Much as I agree with the Boykin dissent, it is of course the majority opinion which we are bound to observe. For that reason I reluctantly concur in the result.

LARSON, J., joins in this special concurrence.

GARFIELD, Chief Justice (dissenting).

I dissent from the majority opinion on grounds indicated in the specially con-

curring opinion of Justice LeGrand, together with the further fact the Supreme Court has not clearly held that its decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, must be applied retroactively.

SNELL, MOORE, and STUART, JJ., join in this dissent.