**STATE of Iowa, Appellee,**

v.

**Jack Leroy ROBBINS, Appellant.**

**No. 59799.**

Supreme Court of Iowa.

Aug. 31, 1977.

John W. Ackerman, Cedar Falls, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle IV, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

LeGRAND, Justice.

Defendant was charged by Information with driving his automobile in violation of § 321.561, The Code, 1975. When his demurrer to the Information was overruled, he elected to stand on the grounds there asserted and refused to plead over. He was later sentenced under the provisions of § 777.10, The Code, 1975. He appeals. We reverse and remand.

Defendant's demurrer raised constitutional grounds which we discuss later. He relies on those same grounds here and in addition claims he was wrongfully denied the safeguards mandated by *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969); that the trial court misinterpreted § 321.561 in sentencing him; and that he was denied his right of allocution at sentencing in violation of § 789.6.

Before disposing of the issues raised, we set out the applicable portions of the pertinent statutes. Defendant was sentenced as an habitual traffic offender. Such a person is defined in § 321.555, The Code, 1975, a new statute enacted by the 65th General Assembly in 1974. The pertinent part of the section is as follows:

"As used in this division, 'habitual offender' means any person who has accumulated convictions for separate and distinct offenses described in subsections 1, 2, or 3, committed after July 1, 1974, as follows:

1. Three or more convictions within a six-year period, of the following offenses, either singularly or in combination:

a. Manslaughter resulting from the operation of a motor vehicle.

b. Driving a motor vehicle while under the influence of an alcoholic beverage or a controlled substance as defined in section 204.101.

c. Driving a motor vehicle while operator's or chauffeur's license is suspended or revoked.

d. Perjury or the making of a false affidavit or statement under oath to the department of public safety.

e. An offense punishable as a felony under the motor vehicle laws of Iowa or any felony in the commission of which a motor vehicle is used.

f. Failure to stop and leave information or to render aid as required by section 321.263.

g. A violation of the traffic laws, except parking regulations, committed during a period of suspension or revocation.

2. * * *

3. * * *"

There follows a civil procedure by which the district court may find a defendant to be an habitual offender (*see* §§ 321.556–321.559, The Code, 1975). If the court makes such a finding, the offender's license to operate a motor vehicle on the highways of this state is suspended for a period of six years. § 321.560, The Code.

Violation of this restriction is made a misdemeanor under § 321.561 and is punishable as follows:

"*Punishment for violation.* It shall be unlawful for any person convicted as an habitual offender to operate any motor vehicle in this state * * * [for a period of six years]. Any person guilty of violating the provisions of this section shall upon conviction be punished by imprisonment in the penitentiary for not more than two years and notwithstanding the provisions of section 687.2, such conviction shall constitute a misdemeanor and not a felony."

When defendant stood on his demurrer, he was sentenced under § 777.10, The Code, 1975, which we set out in full:

"*Pleading over—final judgment.* If the demurrer is overruled, the defendant has a right to plead to the indictment; if he fails to do so, final judgment may be rendered against him on the demurrer, and, if necessary, a jury may be impaneled to inquire and ascertain the degree of the offense."

I. As already noted, defendant demurred to the Information charging him with violating § 321.561. He claimed the statute is unconstitutional because it provides a person shall be imprisoned in the penitentiary without being afforded the procedural safeguards to which those prosecuted for felonies are entitled; the classification of a violation of § 321.561 as a misdemeanor while at the same time imposing penitentiary punishment for its violation is arbitrary and capricious and constitutes cruel and inhuman punishment; the statute violates the 6th Amendment of the Consti-

tution of the United States because defendant was denied appointed counsel at his civil hearing for being an habitual traffic offender under § 321.555, The Code, which later formed the basis for his sentence under § 321.561.

It is clear defendant's principal challenge is to the right of the legislature to classify as a misdemeanor an offense punishable by a two-year penitentiary term because § 687.2 defines a felony as "a public offense which is, or in the discretion of the court may be, punished by imprisonment in the penitentiary or men's reformatory or the women's reformatory."

Defendant argues a violation of § 321.561 is a felony under this definition and that the legislature may not designate it as a misdemeanor. Defendant insists the classification of this offense as a misdemeanor is arbitrary and capricious, denying him equal protection of the law. He says, too, punishment of a misdemeanor by imprisonment in the penitentiary is cruel and inhuman punishment. We find no merit in this argument.

All crimes in this State are statutory. *Wright v. Denato,* 178 N.W.2d 339, 341 (Iowa 1970); *State v. Wallace,* 259 Iowa 765, 772, 145 N.W.2d 615, 620 (1966); *State v. DiPaglia,* 247 Iowa 79, 84, 71 N.W.2d 601, 604 (1955). In defining crimes, as in all other legislation, the legislature is its own lexicographer. *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 629 (Iowa 1971); *Cedar Mem. Park Cem. Ass'n v. Personnel Assoc., Inc.,* 178 N.W.2d 343, 346 (Iowa 1970); *Inter-State Nurseries, Inc. v. Iowa Dept. of Revenue,* 164 N.W.2d 858, 861 (Iowa 1969); *State v. DiPaglia, supra,* 247 Iowa at 84, 71 N.W.2d at 604; *Young v. O'Keefe,* 246 Iowa 1182, 1186, 69 N.W.2d 534, 537 (1955).

Since the legislature may define which crimes shall be felonies and which shall be misdemeanors, it may also create exceptions to those classifications to meet exceptional or unique circumstances.

While it is true crimes in this State are ordinarily classified as felonies or misdemeanors by the punishment imposed (*see State, v. DiPaglia, supra,* 247 Iowa at 87–88, 71 N.W.2d at 606), that does not preclude the legislature from providing exceptions to such designations. *DiPaglia* tacitly recognizes this. *See also State v. District Court,* 238 N.W. 290, 292 (Iowa 1931) (not published in Iowa Reports.) The only constitutional requirement is that such a classification is a reasonable one, operates equally on all within the class, and bears logical relationship to the purpose to be accomplished. In attacking the statute defendant must establish its invalidity, by negating every reasonable hypothesis upon which it might be sustained.

We considered similar problems in another area in *Keasling v. Thompson,* 217 N.W.2d 687, 689 (Iowa 1974), where we said:

"Ordinarily, statutes, with notable exceptions not here involved, regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the validity of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. *Hearth Corporation v. C–B–R Development Co., Inc.,* Iowa, 210 N.W.2d 632, 636, 637; *State v. Vick,* Iowa, 205 N.W.2d 727, 729, and the many authorities cited in these opinions. The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things. *If a classification is reasonable and operates equally upon all within the class, it is a valid classification. Brown Enterprises, Inc. v. Fulton,* Iowa, 192 N.W.2d 773, 776 and citations." (Emphasis supplied.)

In view of continued injuries and fatalities from highway accidents, the legis-

lature could well decide, as it apparently did, that those who repeatedly violate the laws of the road must be dealt with more harshly than the occasional offender. We cannot say this is an arbitrary or capricious classification. It is, rather, a reasonable attempt to protect those rightfully using the highways from those who persistently demonstrate an utter disregard for the safety of others.

■ We have considered, too, defendant's insistence that the statute calls for cruel and inhuman punishment because it provides for penitentiary confinement. We do not agree. The legislature has authority to prescribe punishment for crimes. *State v. Jackson,* 204 N.W.2d 915, 916 (Iowa 1973). This power is, of course, limited by constitutional standards which the legislature must observe. One of these is the prohibition against cruel and unusual punishment contained in the 8th Amendment to the federal constitution.

■ Punishment may be cruel and unusual in violation of the 8th Amendment to the constitution either because it inflicts torture or is otherwise barbaric or because it is so excessively severe that it is disproportionate to the offense charged. *See Coker v. Georgia,* —— U.S. ——, 97 S.Ct. 2861, 53 L.Ed.2d 982, opinion filed June 29, 1977; *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, 763 (1962); *Coon v. United States,* 8th Cir., 360 F.2d 550, 555, *cert. denied* 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed.2d 100 (1966); *State v. Nance,* 20 Utah 2d 372, 438 P.2d 542, 544 (1968); *Cipolla v. State,* 207 Kan. 822, 486 P.2d 1391, 1393 (1971).

In the case before us defendant argues a two-year penitentiary sentence is unconscionably severe, grossly disproportionate to the offense, and in violation of the cruel and unusual provisions of the 8th Amendment.

The penalty is indeed severe but we believe it is well within the legislative limits of discretion in its efforts to minimize highway injuries and deaths. Apparently the legislature concluded strong measures were

necessary to deter those who were already guilty of repeated offenses from further violations. *Cf. State v. DiPaglia, supra,* 247 Iowa at 85–86, 71 N.W.2d at 604–605.

■ The penalty does not constitute cruel and unusual punishment.

■ We discuss briefly defendant's claim § 321.561 is unconstitutional as violative of Amendment 6 to the Constitution of the United States because he was denied appointed counsel in his hearing on the suspension of his license, a civil action under §§ 321.556–321.559. We do not reach the merits of this issue and express no opinion as to defendant's right to counsel at such a hearing. The record before us does not include the proceedings (except the judgment) incident to that hearing. We have no way of knowing if defendant is indigent. The record strongly suggests he is not. We have therefore nothing to review.

We hold there is no merit to any of the grounds raised in defendant's demurrer and that the trial court correctly overruled it.

II. However, we believe defendant is entitled to relief on several of the issues he raises concerning sentencing under § 777.10.

· The first of these involves defendant's insistence he should have been advised by the trial court of the so-called *Sisco* safeguards before he was sentenced.

Since *Sisco* we have reversed convictions based on guilty pleas unless the record disclosed the standards there announced were met. *See State v. Sisco, supra,* 169 N.W.2d at 547–549.

By express limitation *Sisco* applies only to guilty pleas. This is not a guilty plea. However, we believe the *Sisco* rationale makes it just as necessary to advise a defendant of his rights before he is sentenced under § 777.10 as when he is sentenced following a plea of guilty.

Proceedings under § 777.10 are quite rare. However, at least several cases have resorted to it. *See State v. Wedelstedt,* 213 N.W.2d 652, 654 (Iowa 1973); *State v. Lavin,* 204 N.W.2d 844, 846 (Iowa 1973) (both

reversed on other grounds). Although the statute may be invoked without a formal adjudication of guilt, it authorizes the same punishment as if there had been a plea or jury verdict determining guilt.

It is incongruous to say such a judgment may be imposed without advising defendant of its consequences and of the constitutional rights he is waiving by standing on his demurrer. It is much more likely a defendant needs such advice then than when he pleads guilty. The ordinary defendant would understand the meaning of pleading guilty much more readily than he would know what it meant to "stand on his demurrer."

█ Not all the standards adopted in *Sisco* are applicable. For instance, there would be no occasion to inquire into a factual basis for the charge because defendant is not admitting commission of the offense. However, defendant should understand the charge against him and the consequences of his decision. He should know he is waiving his right to trial by jury, his right to confront and cross-examine his accusers, and his right to demand that guilt be proven beyond a reasonable doubt. He should be advised, too, of the punishment which might be imposed.

Perhaps this is of little precedential value since the new Iowa Criminal Code, which becomes effective January 1, 1978, abolishes demurrers and repeals § 777.10 without enacting a similar section to replace it. *See* Chapter 2, Iowa Criminal Code, § 1301, Rule 10.

█ We hold defendant's sentence must be set aside because the trial court failed to inform him of any of these matters.

III. The trial court erred, too, in holding a penitentiary sentence is mandatory under § 321.561, The Code, and that neither suspension nor probation is permitted, despite the provisions of Chapter 789A, The Code.

It is uncertain from the record whether the trial court's decision was based upon the fact that § 321.218 provides a mandatory sentence for one convicted under that section for driving while his license is under suspension or whether, as the State suggests, because the use of "shall" in the statute makes such a sentence mandatory. In either event the trial court was wrong.

The provisions of § 321.218 are not applicable here. We are controlled by the provisions of § 321.561, which makes no exception as to a granting of probation or the suspension of sentence. We are dealing here with a new crime recently defined by the legislature, one for which a separate penalty is prescribed.

We consider now the meaning to be accorded the word "shall" as used in § 321.-561, The Code. First, we confront § 4.1(36), The Code, which provides as follows:

"Unless otherwise specifically provided by the general assembly, whenever the following words are used in a statute * * * their meaning and application shall be:

(a) the word 'shall' imposes a duty.

(b) the word 'must' states a requirement.

(c) the word 'may' confers a power."

█ This statute, however, must be read in *pari materia* with § 789A.1, The Code, which grants trial courts authority (except in circumstances not applicable here) to defer sentence, to grant probation, or to impose punishment. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977); *Wonder Life Company v. Liddy*, 207 N.W.2d 27, 32–33 (Iowa 1973).

█ It is clear § 321.561 and § 789A.1 together comprise a legislative plan for the sentencing of those convicted of the crime with which defendant is here charged. As used in this context, the word "shall" does not require the trial court to sentence defendant to a penitentiary term. It means only that if the court's discretionary power to defer sentence or grant probation is not exercised, defendant must then be sentenced to the penitentiary.

This conclusion is buttressed by the fact that all our sentencing statutes are couched in "shall" language. As examples *see* §§ 708.2 and 708.3 (burglary); § 709.2 (larceny); § 711.3 (robbery); § 721.1 (perjury); § 698.1 (rape); §§ 707.1 and 707.2 (arson); § 694.5 and § 694.6 (assault).

We hold that the legislature intended sentences under § 321.561 to be subject to probation at the trial court's discretion. Any other interpretation would completely emasculate Chapter 789A.

The State argues, however, that even if this is true, the sentence should be upheld because it is within the statutory limitations and hence not an abuse of discretion. The State's argument misses the mark. The evil here is not that the court abused its discretion but that it did not exercise it.

■ The duty of a sentencing judge in every case is to consider available options, to give due consideration to all circumstances in the particular case, and to exercise that option which will best accomplish justice both for society and for the individual defendant. Chapter 789A sets out guidelines to assist in this task. We recently discussed a judge's obligation to exercise discretion in imposing sentence in *State v. Jackson,* 204 N.W.2d 915, 916–917 (Iowa 1973).

■ The trial court's failure to exercise the discretion the statute vests in him requires a reversal for resentencing. We express no opinion as to what the sentence should be or as to how the trial court's discretion should be exercised.

IV. In connection with sentencing, too, defendant says he was denied his right of allocution under § 789.6. Since this is unlikely to occur upon resentencing, we give it no further consideration.

For the reasons stated in Divisions II and III hereof, the judgment is reversed and the case is remanded for further proceedings consistent herewith.

REVERSED AND REMANDED.