STATE of Iowa, Appellee,

v.

Michael John CHASE, Appellant.

No. 57842.

Supreme Court of Iowa.

Nov. 12, 1975.

Terry W. Guinan, Fort Dodge, for appellant.

Richard C. Turner, Atty. Gen., Dorothy L. Kelley, Asst. Atty. Gen., and Roger L. Sutton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

MOORE, Chief Justice.

Defendant, Michael John Chase, age 23, was charged, tried, convicted and sentenced for assault with intent to inflict bodily injury in violation of Code section 694.6 and has appealed. We affirm with modification of the sentence.

Defendant asserts the trial court erred in (1) not requiring a mental examination of defendant under Code section 789.8, (2) not directing a verdict in favor of defendant where no evidence was introduced to prove defendant was sane at the time of the crime, (3) not directing a verdict in favor of defendant based on claim of insufficient identification evidence and (4) sentencing defendant to Fort Madison Penitentiary.

In the early evening of August 20, 1974 Diane Carney, 20 and her 14-year-old sister Dawn were canoeing downstream on the Cedar River through Idlewild Park, searching for a suitable place to camp out for the night. Defendant, having seen them on the river, came down to the river from his own campsite on the west bank. Diane inquired of defendant the location of campsites in the park. After a short conversation, he directed them upstream to campsites also on the west bank of the river and offered to show them the location. They declined his offer and paddled upstream. Shortly after selecting a site upstream the girls turned to find defendant standing near them insisting that he be allowed to show them a campsite. Unwilling to go with defendant, the girls waded across the knee-deep river to the east bank, where they found a suitable place to camp.

Shortly before midnight, Diane was awakened by the sound of someone coming up the trail from the river. A few moments later she was hit over the head with a canoe paddle. Dawn was also struck. When the girls screamed, the assailant ran back down the trail. Although neither girl saw the assailant's face, Diane was able to shine her light on the person's back long enough to recognize him as the man they had seen earlier on the river. After the girls reported the attack, Sheriff's deputies found defendant in the back seat of his car parked near his campsite on the west side of the river. He was taken into custody and placed in a lineup where Dawn identified him as the man they had seen earlier in the day. Defendant was then placed under arrest. At trial Diane described in detail defendant's features and clothing as she observed them as he was leaving after the assault. She made in-court identification of defendant as her assailant.

Evidence produced by the State indicated that acquaintances of defendant had heard him say earlier in the evening that he was "going to raise some hell" with a couple of girls camped across the river from him. Other testimony placed defendant at the park between 10:00 and 11:00 P.M. Sheriff's deputies testified defendant was barefoot at the time of arrest and that his pant legs were wet evenly all around about half way to the knees.

After overruling defense motions for dismissal and a directed verdict based on claimed lack of identification evidence, the matter was submitted to the jury which returned a verdict of guilty.

I. Defendant's first assignment of error asserts the trial court had sufficient evidence before it to establish reasonable grounds to doubt defendant's sanity and therefore was required to order a mental evaluation of defendant before entering judgment against him. Counsel relies on Code section 789.8 to support this assignment of error.

Under section 789.8, as supplemented by chapter 783, the court is directed to hold a jury hearing on the question of defendant's sanity prior to entry of judgment if there is "reasonable ground for believing him insane." "Insanity" for the purpose of section 783.1 is defined as "defendant's mental capacity to appreciate the charge against him, understand the proceedings, and conduct his defense." *State v. Thomas,* Iowa, 205 N.W.2d 717, 719; *State v. Youngbear,* Iowa, 229 N.W.2d 728, 735. We have said that reasonable doubt as to sanity must be determined:

"* * * by a consideration of all the facts and circumstances obtained from reasonably trustworthy sources and which are in themselves sufficient to warrant a man of reasonable caution to believe the accused in a criminal matter can or cannot appreciate the charge against him, understand the proceedings, and help conduct his defense. Past commitments to a mental hospital, releases, and discharges, as well as medical or expert opinions, may be considered in the determination of such reasonable doubt, but they in themselves are not conclusive of the issue before the court." *Hickey v. District Court of Kossuth County,* Iowa, 174 N.W.2d 406, 410.

Immediately before trial the following record was made:

"MR. SUTTON: (assistant county attorney) Your Honor, there is a request for an evaluation of Mr. Chase on file by the defendant's attorney. I am assuming that that is still to go through and he is still seeking that evaluation.

"MR. HENKE: (defendant's attorney) We would like to have the evaluation, definitely. But, Mr. Chase is insistent that he be given his right to immediate trial, and that's the reason I have requested the same, your Honor.

"THE COURT: Might I inquire, Mr. Henke, is there any question concerning the defendant's mental capacity?

"MR. HENKE: Our primary concern, your Honor, was back nine-odd years ago, I understand that Mr. Chase had an operation in Iowa City for the removal of a brain tumor.

"THE DEFENDANT: Correction, that was in Missouri. Springfield, Missouri.

"MR. HENKE: In Springfield, Missouri?

"THE DEFENDANT: Yes.

"MR. HENKE: At which time they indicated that—according to my information, and I'm saying this based upon what his mother has told me, she told me Iowa City—and they had removed practically all of this tumor, and he was supposed to have been all right, have no further problem with it. But, we were apprehensive about this aspect.

"THE COURT: Well, might I inquire then why have you requested a mental examination if it was not for the purpose of either a defense or for the purpose of determining whether the defendant is able to assist in his own defense?

"MR. HENKE: Well, as I say, I'm making this request at Mr. Chase's insistance that he would like to have the trial as quickly as possible. Is that correct, Mr. Chase?

"THE DEFENDANT: Yes.

"THE COURT: Well, then do you withdraw the application to have the mental examination?

"MR. HENKE: He requests that it be withdrawn, your Honor.

"THE COURT: Would you file such a document in each case?

"MR. HENKE: Yes, sir."

■ Determination of whether the above record raises a reasonable doubt as to defendant's sanity rests in the trial court's sound judicial discretion. *State v. Milford,* Iowa, 186 N.W.2d 590, 593. Under all the facts and circumstances here, we find no basis for holding the discretion was abused.

■ II. We need not consider defendant's second assignment of error. At the close of the State's evidence and again at the close of all evidence, defense counsel made motions to dismiss and for directed verdict based on claimed insufficiency of identification evidence. The same reasons were set forth in support of the motion for new trial. The issue of defendant's sanity at the time of the crime was first raised in this appeal and is not properly before the court. *State v. Cowman,* Iowa, 212 N.W.2d 420, 422.

■ III. Defendant asserts the State did not present sufficient evidence to connect defendant with the crime charged. The burden upon the State is to introduce substantial evidence identifying the person charged. We view the evidence in the light most favorable to the State in order to uphold the jury verdict. *State v. Baker,* Iowa, 224 N.W.2d 7, 8. On the facts as outlined above, we find the State produced substantial evidence connecting defendant to the crime.

IV. We have considered the issues raised by this appeal and find no ground for reversal.

V. Although no reversible error has been found, we must modify the sentence imposed by the trial court.

■ The court sentenced defendant under Code section 694.6 which provides that persons convicted of that offense shall be committed to "the penitentiary." Read literally that wording would indicate incarceration in Fort Madison. However, Code section 789.16 provides, with certain exceptions not involved here, that a person "between the ages of sixteen and thirty years, and who has never before been convicted of a felony, shall be confined in the men's reformatory * * *."

Defendant Chase is 23 years old; he has no prior felony convictions; and assault under section 694.6 is not one of the named exceptions to section 789.16. Under provisions of section 789.16 the defendant should have been sentenced to the Anamosa Men's Reformatory rather than the Fort Madison Penitentiary.

The conviction is affirmed with directions to the court to resentence defendant in conformity with this opinion.

Affirmed and modified.