Robert B. WALLACE, Appellant,

v.

STATE of Iowa, Appellee.

No. 2–58782.

Supreme Court of Iowa.

Sept. 22, 1976.

James M. Sullivan, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

LeGRAND, Justice.

This is a postconviction proceeding under Chapter 663A, The Code, to challenge petitioner's sentence following his guilty plea to a charge of robbery with aggravation committed in violation of § 711.2, The Code.

Petitioner seeks to set aside his plea as having been entered in violation of the standards set forth in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969) and *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974). We reverse and remand with instructions.

The plea was entered on February 5, 1973, more than a year before *Brainard,* which has no retroactive effect. However, much of what we said in *Brainard* was explanatory of *Sisco.* To that extent *Brainard,* as well as *Sisco,* bears on our consideration of the present appeal.

Petitioner assails the plea procedure because, he says, the trial court failed to inform him that his guilty plea waived his privilege against self-incrimination; he did not understand the charge against him; the trial court did not determine that there was a factual basis for the plea; the record fails to show the plea was voluntary.

We believe the record is minimally sufficient on the first three of these, but the

judgment must be reversed because the record does not show the plea was constitutionally voluntary under *Sisco* standards.

Petitioner's insistence that his plea was not voluntarily entered rests upon the contention it was based on undisclosed plea bargaining. He argues he did not understand the agreement resulting from the plea negotiations. He also says he pled guilty because of the representations made as to additional prosecutions and possible harsher punishment if he did not do so.

Plea bargaining bears upon voluntariness because it involves promises or concessions made in return for the plea. We discussed this in *Sisco* (169 N.W.2d 547–548), where we adopted the Minimum Standards for Criminal Justice, Pleas of Guilty, of the American Bar Association, including Standard 1.5 as follows:

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea."

*Brainard,* decided five years after *Sisco,* expanded upon the concept of plea bargaining as it affects the voluntariness of a guilty plea.

Before considering this appeal, we mention again the increasing volume of cases reaching us on plea or plea-related matters. In *State v. Wall,* 239 N.W.2d 548 (Iowa 1976), we said:

"This is another in a rising flood of appeals involving guilty plea hearings which question trial court compliance with the requirements of our six-year-old decision in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969)."

Nothing has happened to change this view. There has been no perceptible decrease in the number of appeals on guilty pleas or plea-related matters. The present case is another which must be reversed on an issue which has been here on numerous occasions.

As heretofore mentioned, defendant says his guilty plea was not voluntary because of his misunderstanding of the plea bargain agreement. We have recognized plea bargaining as a useful and practical tool in disposing of the ever burgeoning volume of criminal cases. *State v. Hansen,* 221 N.W.2d 274, 277 (Iowa 1974). We must now decide if the plea bargaining procedure followed here meets the standards heretofore adopted. We hold it does not.

When petitioner pled guilty, there were pending against him eight other felony charges. In addition to these, he had earlier pled guilty to another felony—forgery—although sentence on that plea had not yet been pronounced. According to the undisputed evidence, petitioner was reluctant to plead to the robbery charge. Plea bargaining ensued, participated in by the county attorney, defense counsel (not petitioner's present counsel) and petitioner. The State agreed to drop all *pending* charges in return for petitioner's plea of guilty to robbery with aggravation. Petitioner thereupon pled guilty to the robbery charge and was sentenced to serve a term of not more than 25 years in the penitentiary. *See* § 711.2, The Code.

None of the eight other felony charges has been pressed, although it is not clear whether they have actually been dismissed. Several months after the robbery sentence, defendant was returned from the penitentiary for sentencing on the forgery charge. That sentence triggered the dispute now before us.

The issue is: Did the State agree to dismiss the eight pending felony charges *and* the forgery charge upon which defendant

was awaiting sentence; or did it agree to dismiss all charges *except* the forgery charge?

There were only two witnesses at the postconviction hearing, the petitioner and his then attorney. The fact of plea bargaining is not contested. The only disagreement concerns the terms of the bargain. Petitioner claims he "misunderstood" the agreement. His trial counsel, on the other hand, stated it was his "impression" dismissal of the forgery charge was not part of the plea bargain.

■ However, the record is silent as to whether this "impression" was communicated to petitioner. If not, it is meaningless because it is what petitioner understood, not what his attorney thought, which is important. The decision to plead guilty or not was defendant's alone. *Henderson v. Morgan,* — U.S. —, —, 96 S.Ct. 2253, 2259, 49 L.Ed.2d 108, 117–118 (concurring opinion) (1976); *State v. Thomas,* 205 N.W.2d 717, 723 (Iowa 1973).

We have upheld pleas in a number of plea bargaining cases even though the *Sisco* directions were not literally followed in keeping with our view that we do not insist a "ritualistic formula," requiring only "meaningful compliance" with the standards there adopted. *See State v. Warner,* 229 N.W.2d 776, 779 (Iowa 1975); *State v. Hansen, supra,* 221 N.W.2d at 277; *State v. Reppert,* 215 N.W.2d 302, 308 (Iowa 1974); *State v. Christensen,* 201 N.W.2d 457, 459 (Iowa 1972).

In all of these the trial court failed to inquire specifically into the matter of plea bargaining. However, in each of them inquiry had been made concerning promises and threats generally; and in each instance, such inquiry brought a negative response. We held this sufficient because, if there were *no* threats or promises, there could have been no plea bargaining threats or promises either. Even so, in both *Warner* and *Hansen* we asked more faithful adherence to *Sisco* requirements in plea proceedings.

■ Unlike the cases heretofore cited, there are no saving circumstances here. There was no inquiry concerning promises or threats generally, and there was no inquiry concerning plea bargaining specifically. The matter was completely ignored.

This assumes unusual importance because of the position now taken by the petitioner. In the face of admitted plea bargaining, he insists he misunderstood the import of the agreement reached. Furthermore when petitioner's trial court attorney testified at the postconviction hearing, he did not say he advised petitioner the forgery charge was not to be dismissed. If such advice had been given, it would seem to satisfy the "meaningful compliance" test of both *Sisco* and *Brainard* under the holding in *Henderson v. Morgan, supra.*

In *Henderson* the court placed considerable reliance on the district court's finding that defendant "was not advised *by counsel or court,* at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree." (Emphasis supplied). (— U.S. —, 96 S.Ct. 2255, 49 L.Ed.2d 112)

The *Henderson* opinion also contains these statements:

"The lawyers gave respondent advice about the different sentences which could be imposed for the different offenses, but, as the District Court found, *did not explain the required element of intent.*" (Emphasis supplied) — U.S. —, 96 S.Ct. 2256, 49 L.Ed.2d 113.

"In direct colloquy with the trial judge respondent stated that his plea was based on the advice of his attorneys, that he understood he was accused of killing Mrs. Francisco in Fulton County, that he was waiving his right to a jury trial and that he would be sent to prison. There was no discussion of the elements of the offense of second-degree murder, *no indication that the nature of the offense had ever been discussed with respondent,* and no reference of any kind to the requirement of intent to cause the death of the vic-

tim." (Emphasis supplied) —— U.S. ——, 96 S.Ct. 2256, 49 L.Ed.2d 113.

"Defense counsel did not purport to stipulate [that respondent had the requisite intent]; *they did not explain to him that his plea would be an admission of that fact*; and he made no factual statement or admission necessarily implying he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary." (Emphasis supplied) —— U.S. ——, 96 S.Ct. 2258, 49 L.Ed.2d 115.

"Normally the record contains either an explanation of the charge by the trial judge, *or at least a representation by defense counsel that the nature of the offense has been explained to the accused.* Moreover, even without such an expressed representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Emphasis supplied) —— U.S. ——, 96 S.Ct. 2258, 49 L.Ed.2d 115–116.

The foregoing excerpts suggest trial counsel may in the future play a far greater role in plea proceedings than we described and decried in *State v. Hansen, supra,* 221 N.W.2d at 277–278. However, they are of no assistance to us here because under this record we cannot assume petitioner had the benefit of counsel's advice on the disputed question. The testimony is overwhelmingly to the contrary.

Investigation concerning plea bargaining at the time the plea was entered would have disclosed petitioner's confusion or would have elicited responses making it impossible for him to belatedly claim confusion now. We cannot speculate as to what that investigation would have elicited, and therefore the judgment is reversed.

The case is remanded with instructions that petitioner be permitted to withdraw his plea of guilty and for appropriate proceedings thereafter.

REVERSED AND REMANDED.

MOORE, C. J., and REES, UHLENHOPP and HARRIS, JJ., concur.

McCORMICK, MASON, RAWLINGS and REYNOLDSON, JJ., concur specially.

McCORMICK, Justice (concurring specially).

Although I concur in the result, I do not agree with the majority opinion's view of ABA Standard 1.5, Pleas of Guilty, or what it says about the implications of *Henderson v. Morgan,* —— U.S. ——, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). I do not believe "meaningful compliance" with Standard 1.5 would have been demonstrated in the present case if petitioner's trial attorney had testified in the postconviction hearing that he advised petitioner the plea bargain did not call for the forgery charge to be dismissed. Nor do I believe the *Henderson* case suggests "trial counsel may in the future play a far greater role in plea proceedings than we described and decried in *State v. Hansen,* * * * [221 N.W.2d 274, 277–278 (Iowa 1974)]."

I. *The ABA Standard.* It is a contradiction in terms to say meaningful compliance with ABA Standard 1.5, Pleas of Guilty, can be established by making a supplemental evidentiary record in a collateral attack proceeding. By its terms the standard applies in the plea proceeding. It imposes a procedural duty on the trial court in that proceeding. Therefore, meaningful compliance with the standard cannot occur unless it occurs there. The majority's suggestion that meaningful compliance with the standard can await a postconviction proceeding is an invitation to the very evil the standard was intended to prevent.

This standard, adopted in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969), imposes a procedural duty on the trial court in the original plea proceeding to implement the constitutional mandate of the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It is designed to help assure in the record of the plea proceeding that a defendant's plea of guilty is a voluntary and intelligent act and to help reduce the great waste of judicial re-

sources required to process frivolous attacks on guilty plea convictions that are encouraged and are more difficult to dispose of when the original record is inadequate. *Brainard v. State,* 222 N.W.2d 711, 713–714 (Iowa 1974), and citations.

The standard contains four requirements. First, the judge should not accept a plea of guilty without determining that the plea is voluntary. Second, by inquiry of the prosecuting attorney and defense counsel the judge should determine whether the tendered plea if the result of a plea bargain and, if so, what was agreed. Third, if the prosecutor has agreed to seek charge or sentence concessions which must be approved by the court, the judge must advise the defendant personally that the prosecutor's recommendations are not binding on the court. Fourth, the judge should address the defendant personally to determine whether any other promises or any force or threats were used to obtain the plea.

Because the standard imposes a trial court duty in the original plea proceeding, questions regarding compliance can be resolved only by examination of the record of that proceeding. The cases involving the standard cited in the majority opinion were decided on that basis. See *State v. Warner,* 229 N.W.2d 776 (Iowa 1975); *State v. Reppert,* 215 N.W.2d 302 (Iowa 1974); *State v. Christensen,* 201 N.W.2d 457 (Iowa 1972). The issue of compliance with the standard was not raised or decided in *State v. Hansen,* 221 N.W.2d 274, 277 (Iowa 1974), although we observed the voluntariness challenge which was made in that case might well have been avoided if the trial court had followed the standard in the plea proceeding.

However, these cases support the principle that a conviction on a guilty plea may be upheld despite the judge's failure to comply with Standard 1.5 when the record of the plea proceeding is sufficient to show affirmatively that the purpose of the standard was otherwise accomplished or that the plea did not result from unkept promises or misunderstanding. As the present case illustrates, when the standard is not

followed the conviction must be set aside unless the record affirmatively shows the defendant was not prejudiced by the trial judge's omission. We have not previously decided, and we do not have to decide here, the more basic question of whether the record may be supplemented in a postconviction proceeding to show that noncompliance with the standard was not prejudicial. Such decision should await a case where the issue exists.

II. *The Henderson case.* In saying that *Henderson v. Morgan,* supra, suggests counsel may in the future play a far greater role in plea proceedings, the majority opinion confuses the constitutional standards discussed in *Henderson* with the procedural standards mandated in *Sisco.* The *Sisco* standards are intended to implement the constitutional standards, but they do not constitute the only means of achieving them. Apart from the majority's misplaced reliance on *Henderson,* its statement ignores the crucial responsibilities we have imposed on counsel in plea proceedings. The problem in *Henderson* would not have occurred had the trial judge and counsel followed the procedures we have mandated in *Sisco* and its progeny.

In *Henderson* the Supreme Court held a state-court defendant's plea of guilty to second-degree murder was not voluntary when it was not shown he knew intent to cause the death of his victim was an element of the offense. The court said:

"There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary." —— U.S. at ——, 96 S.Ct. at 2258, 49 L.Ed.2d at 115.

Morgan's conviction antedated *Boykin v. Alabama,* supra, and *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

As noted by four justices who joined the majority opinion in *Henderson* but who also concurred specially:

"[I]t is too late in the day to permit a guilty plea to be entered against a defendant solely on the consent of the defendant's agent—his lawyer. Our cases make absolutely clear that the choice to plead guilty must be the defendant's: it is *he* who must be informed of the consequences of his plea and what it is that he waives when he pleads, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and it is on his admission that he is in fact guilty that his conviction will rest." —— U.S. at ——, 96 S.Ct. at 2260, 49 L.Ed.2d at 117–118. (White, J., concurring).

Nothing in *Henderson* signals that we should depart from the principles recognized in our cases. The case confirms the desirability and practical necessity of the procedural mandates of *Sisco* and subsequent cases. See Bishop, Guilty Pleas in the Northern Midwest, 25 Drake L.Rev. 360–399 (1975). We have repeatedly and consistently held a defendant's guilty plea conviction cannot stand unless the record affirmatively shows he understood the nature of the charge against him at the time he entered his plea. See *State v. Buhr,* 243 N.W.2d 546 (Iowa 1976); *State v. Wall,* 239 N.W.2d 548 (Iowa 1976); *State v. Frazier,* 232 N.W.2d 480 (Iowa 1975); *State v. Watts,* 225 N.W.2d 143 (Iowa 1975); *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974). We have also said, "There is no adequate substitute for demonstrating in the record at the time the plea is tendered defendant's understanding of the nature of the charge made against him." *State v. Reppert,* supra, 215 N.W.2d at 306.

Seven years ago, in *Sisco,* we adopted standards which trial judges must follow in guilty plea proceedings. These standards impose upon the trial judge who accepts a tendered guilty plea the responsibility to assure that the record of the plea proceeding affirmatively discloses that the defendant's plea is voluntary, intelligent, and has a factual basis. We adopted them as a prophylactic measure in response to the constitutional mandate of the Supreme Court in *Boykin v. Alabama,* supra.

In *Boykin,* the Court held it was error for an Alabama trial judge to accept a robbery defendant's plea of guilty without an affirmative showing on the record of the plea proceeding that it was voluntary and intelligent. It said that a waiver of the constitutional rights given up by a plea of guilty cannot be presumed from a silent record. As a matter of federal constitutional law, the trial judge must see that an adequate record is made in the plea proceeding:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought [citations], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." 395 U.S. at 243–244, 89 S.Ct. at 1712–1713, 23 L.Ed.2d at 280.

Prior to our decision in *Sisco,* the Supreme Court also decided *McCarthy v. United States,* supra. *McCarthy* concerns Rule 11, Federal Rules of Criminal Procedure, which prescribes a federal trial judge's duty to assure an adequate record in a federal guilty plea proceeding. The ABA standards adopted by this court in *Sisco* have their roots in the *McCarthy* principles. *State v. Buhr,* supra.

Like *Boykin, Henderson* involves constitutional issues. Like *McCarthy, Sisco* involves procedural implementation of constitutional doctrine. The *Sisco* principles enable our trial courts to avoid the constitutional pitfalls exposed in *Boykin* and *Henderson.*

Nothing in *Henderson* foreshadows a lessening of the responsibility of the trial

judge to assure that an adequate record is made in the plea proceeding. In fact, the holding in the case confirms the desirability of "touching all bases" in the plea proceeding to avoid the "spin-off" of collateral proceedings with the inevitable attendant probe of uncertain memories.

Although the trial court is assigned ultimate responsibility under *Sisco* for assuring the adequacy of the record in a plea proceeding, counsel also have crucial responsibilities. We discussed them in *State v. Williams,* 224 N.W.2d 17, 19 (Iowa 1974), and summarized them as follows:

> "The prosecutor and defense counsel are not mute participants in guilty plea proceedings. As an officer of the court and representative of the public, the prosecutor has a responsibility to ensure, insofar as he is capable, that the proceedings are legally adequate. As an officer of the court and representative of the defendant, the defense lawyer has a responsibility to ensure that the record shows the plea of his client is intelligent, voluntary, and accurate."

See *State v. Frazier,* supra.

As long as *Sisco* principles apply, the role of counsel in plea proceedings will not be enlarged at the expense of limiting the role of the trial judge. Nonetheless, under *Sisco* there is sufficient responsibility to go around. I disagree with the majority opinion to the extent it implies otherwise.

Any annoyance caused the court and counsel because of the time and effort expended by the judge in determining the voluntary and intelligent nature of a guilty plea is a price which must be paid and is worth paying for due process of law.

MASON, RAWLINGS and REYNOLDSON, JJ., join in this special concurrence.