STATE of Iowa, Appellee,

v.

Jack L. LEMBURG, Appellant.

Jack L. LEMBURG, Appellant,

v.

Lou V. BREWER and State of Iowa, Appellees.

No. 2–59848.

Supreme Court of Iowa.

Aug. 31, 1977.

Rehearing Denied Oct. 14, 1977.

Gary L. Robinson, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Eugene Kopecky, County Atty., for appellees.

Heard before MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS, and McCORMICK, JJ.

HARRIS, Justice.

These two consolidated appeals arise from a plea of guilty to the crime of assault with intent to commit murder in violation of § 690.6, The Code. Defendant Lemburg sought postconviction relief under chapter 663A, The Code, and appeals the trial court's denial of relief. In addition, Lemburg was given permission for a delayed appeal from his conviction by his guilty plea in the same proceeding. We affirm the trial court on both appeals.

The facts are without serious dispute. On April 12, 1971 Jack L. Lemburg (Lemburg) was indicted on the charge by the Linn County grand jury. He was arraigned on the same day, waived time, and entered a plea of not guilty. On June 22, 1971 he appeared in district court and changed his plea from not guilty to guilty as charged. Lemburg was represented at the time by two Cedar Rapids attorneys whose competence he assails in these proceedings. He claims pressure was inflicted upon him to enter a guilty plea in violation of his constitutional rights and that his plea was not voluntarily entered. He further claims he was not at the time in control of his faculties.

An evidentiary hearing was held on Lemburg's claim on June 25, 1976 after which the trial court filed its ruling which found (1) he had been represented by competent counsel, and (2) the trial court before accepting Lemburg's guilty plea complied with the requirements of *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969) and *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974). The trial court denied and dismissed Lemburg's application for postconviction relief.

I. Lemburg first contends his guilty plea was not knowingly and intelligently entered. He believes the trial court's colloquy at the time of his plea was insufficient to show he understood the nature of the charge against him. He argues the elements of the charge were not com-

pletely explained. The issue involves the first two requisites for taking guilty pleas set down in *Sisco*, supra. The first *Sisco* requirement is that the accused understand the charge. The second *Sisco* requirement is the determination of whether the accused understands the penal consequences of his guilty plea. Only if both requisites are satisfied can it be said an accused's guilty plea was knowingly and intelligently entered.[1]

■ Turning to the first *Sisco* requirement, defendant's understanding of the charge, we note the colloquy between the trial court and defendant on the subject was as follows:

"THE COURT: * * * Mr. Lemburg, I'm going to have to ask you a number of questions to make sure basically of two things: if this decision to change your plea from not guilty to guilty is your own voluntary decision, and secondly, to make sure that you do understand what your legal rights are—

"THE DEFENDANT: Yes.

"THE COURT: —and that you are giving up certain basic legal rights when you plea guilty. All right. To begin with, Mr. Lemburg, you are accused of the felony offense of assault with intent to commit murder in violation of Iowa Code Section 690.6. That Code Section provides as follows: 'If any person assault another with intent to commit murder, he shall be imprisoned in the penitentiary not exceeding thirty years.' Do you understand that that is the description of the offense and that is the punishment that is provided?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now I'm going to discuss with you in a little more detail the sentencing. In Iowa the sentence that would be imposed would read as follows: 'That the defendant shall be imprisoned in the Iowa State Penitentiary at Fort Madison, Iowa, for an indeterminate period of time not to exceed 30 years.' I would have no power to

prescribe a shorter period of time. The actual length of time you would serve would depend on whether or not you were granted parole, would depend whether or not you obtained the time off for good behavior. But in no event would the incarceration be for greater than 30 years. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: All right. Do you understand that murder is defined in the Iowa Code as killing any human being with malice aforethought either express or implied?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand that by pleading guilty you are admitting that you did in Linn County, Iowa, on or about February 21, 1971, assault Joan M. Lloyd with intent to murder her?

"THE DEFENDANT: Yes.

"THE COURT: And by pleading guilty you are admitting that you did that.

"THE DEFENDANT: Yes.

"THE COURT: Malice aforethought—now murder, I might point out, Mr. Lemburg, does not require that you had at the time a specific intent to kill her. It requires only that there be the assault with intent to commit murder. The intent to commit murder is the state of mind of malice, where you did so without regard to whether the victim would live or die. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: All right. Mr. Lemburg, you are charged with assault with intent to commit murder. How do you now plead?

"THE DEFENDANT: Guilty.

" * * *.

"THE COURT: All right. I'm going to go through the legal rights you have with you. I think you may be acquainted with them but I want to make sure you know what they are. You understand that you have a legal right, if you wish, to stick with your plea of not guilty.

1. We note parenthetically this plea was entered June 22, 1971. As such it followed the filing of our opinion in *Sisco*, July 24, 1969. But it preceded the filing of our opinion in *Brainard*, supra, October 16, 1974. *Brainard* by its express holding was not retroactive in effect.

"THE DEFENDANT: Yes.

"THE COURT: And in that event you would have a jury trial, either this coming Monday or at some later date depending on the status of the Petition for Writ of Certiorari.

"THE DEFENDANT: (Nod in the affirmative.)

"THE COURT: Do you understand that you would have a right to not be convicted—

"THE DEFENDANT: Yes.

"THE COURT: —of this crime unless the State proved to all 12 jurors by its evidence beyond a reasonable doubt that you are in fact guilty? Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand you would have the right to have the assistance of Mr. Sullivan and Mr. Pundt—I believe both of you are appointed in this case; is that correct?

"MR. SULLIVAN: Correct.

"MR. PUNDT: Correct.

"THE COURT: —to assist you in the trial of this case; do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: You would have the right to have all the State's witnesses personally brought into court, personally confront them and have your attorneys cross-examine them. You would also have the right to use the Court's power of subpoena to subpoena into Court any witnesses you wanted to be brought here to testify for you. You would have the right at the trial to either take the stand and testify yourself or to not testify, as you chose fit. And if you would choose to not testify you would be entitled to have me instruct the jury that they could draw no inference adverse to you from your failure to testify. In other words, you have a right not to incriminate yourself.

"THE DEFENDANT: (Nod in the affirmative.)

"THE COURT: Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Mr. Lemburg, do you understand that when you plead guilty you are giving up all those rights?

"THE DEFENDANT: Yes, sir.

"THE COURT: There will be no jury trial.

"THE DEFENDANT: (Nod in the affirmative.)

"THE COURT: You are convicting yourself.

"THE DEFENDANT: Yes.

"THE COURT: All right. Have I overlooked anything?

"MR. WHITE [Assistant County Attorney]: Not that I'm aware of, Your Honor."

We believe this record shows the trial court determined defendant understood the nature of the charge. Indeed we believe the colloquy shows full compliance with the more stringent requirements of *Brainard*. This conclusion is strengthened by our holding in *State v. Reaves*, 254 N.W.2d 488 (Iowa 1977). See also *Wallace v. State*, 245 N.W.2d 325 (Iowa 1976); *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

Turning to the second *Sisco* requirement, determining the defendant understands the penal consequences of his guilty plea, we again examine the record made at the time the plea was entered:

"THE COURT: Now I'm going to discuss with you in a little more detail the sentencing. In Iowa the sentence that would be imposed would read as follows: 'That the defendant shall be imprisoned in the Iowa State Penitentiary at Fort Madison, Iowa, for an indeterminate period of time not to exceed 30 years.' I would have no power to prescribe a shorter period of time. The actual length of time you would serve would depend on whether or not you were granted parole, would depend whether or not you obtained the time off for good behavior. But in no event would the incarceration be for greater than 30 years. Do you understand that?

"THE DEFENDANT: Yes."

This record amply complies with the second *Sisco* requirement. The trial court receiving the plea clearly outlined the sentence to which Lemburg would be subjected.

Lemburg's first contention is without merit.

II. The second assignment presented in these joint appeals is whether the trial court established the existence of an adequate factual basis for Lemburg's guilty plea. This assignment addresses the fourth *Sisco* requisite. Lemburg believes the colloquy to establish a factual basis fell short of the requirements outlined in *Ryan v. Iowa State Penitentiary, Ft. Madison,* 218 N.W.2d 616, 619 (Iowa 1974). Lemburg points to the three methods suggested in *Ryan* which might be used to ascertain whether a factual basis exists. He believes none of the suggested methods were used in these proceedings.

The trial court's factual basis inquiry in the colloquy with Lemburg was as follows:

"THE COURT: Do you understand that by pleading guilty, you are admitting that you did in Linn County, Iowa, on or about February 21, 1971, assault Joan M. Lloyd with intent to murder her?

"THE DEFENDANT: Yes.

"THE COURT: And by pleading guilty you are admitting that you did that.

"THE DEFENDANT: Yes."

The trial court found an adequate factual basis existed, noting it had examined the indictment and minutes of testimony. Under our holding in *State v. Greene,* 226 N.W.2d 829, 831 (Iowa 1975) we agree the fourth *Sisco* requirement was satisfied.

This record can easily be distinguished from the inquiry condemned in *Ryan.* In *Ryan* the court merely asked defendant if he was in fact guilty of the crime with which he was charged. The trial court in *Ryan* did not ask defendant if he committed the acts which were the basis of the charge. In the instant case the trial court asked Lemburg if he admitted assaulting the victim with intent to murder her. Lemburg replied affirmatively. The question was simple and easy to understand, wholly unlike the inquiry condemned in *Ryan.*

Even more significantly, in the instant case the trial court referred to the indictment or minutes of testimony. These documents have relevance on the question of factual basis. See *Greene,* supra, 226 N.W.2d at 831. The *Ryan* trial court did not refer to the indictment or minutes of testimony. See also *State v. Marsan,* 221 N.W.2d 278, 280 (Iowa 1974).

Lemburg's second contention is without merit.

III. Lemburg next argues his plea was not voluntarily entered. In his postconviction hearing Lemburg testified he had on several occasions been threatened by members of the Linn County sheriff's department and members of the Cedar Rapids police department. He also testified he had been handcuffed during the guilty plea proceeding, contrary to a court rule.

The trial court found Lemburg's plea was voluntary. The trial judge who received the plea testified at the postconviction hearing he did not believe Lemburg was handcuffed, or at least did not realize he was.

At the time Lemburg entered his plea the trial court made the following record on the voluntariness issue:

"THE COURT: Is this your own voluntary decision?

"THE DEFENDANT: Yes.

"THE COURT: Has anybody induced you to plead guilty by means of any promises of any sort or by means of any threats of any sort?

"THE DEFENDANT: No.

"THE COURT: In other words, what I'm asking you, has anybody promised you that the Board of Parole, for instance, is going to give you an early parole if you plead guilty or anything like that?

"THE DEFENDANT: No.

"THE COURT: Has anybody threatened you in any way—

"THE DEFENDANT: No.

"THE COURT: —to induce you to plead guilty?

"THE DEFENDANT: No.

"THE COURT: All right. Now I do understand that there has been an agreement reached between the County Attorney and the defendant or his lawyers regarding disposition of certain other cases that are pending or may be brought against this defendant; is that right, Mr. White?

"MR. WHITE: That is correct, Your Honor.

"THE COURT: Would you state what that agreement is?

"MR. WHITE: The agreement is, generally, that all other charges would be dismissed or dropped. No further charges would be filed.

"THE COURT: Anything to amplify on that Mr. Sullivan?

"MR. SULLIVAN: No, Your Honor, that covers it.

"THE COURT: All right. I have no reason to believe that agreement will not be fulfilled. There are how many other charges pending?

"MR. WHITE: I believe at the present time there are two additional charges in the District Court and one pending in Municipal Court.

"THE COURT: All right. Now the procedure will be that the County Attorney will make application to the Court to dismiss those cases. Are both cases under Indictment here? The one is, I know; the sodomy case is. What about the other assault case here?

"MR. WHITE: I think that's a True Information, Your Honor, the other assault.

"THE COURT: All right. Those cases will be presented to this Court upon application of the County Attorney for a dismissal. Technically and legally I do not have to grant such a motion; in this case I will. I cannot speak for the Municipal Court. The County Attorney will undoubtedly move to dismiss the other misdemeanor charge pending in Municipal Court. I want to merely advise you so that you understand that the judge over there does have the right, if he wishes, to refuse to grant the motion. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Just as I have the legal right to refuse to grant the motion on the two other cases pending in this court.

"THE DEFENDANT: (Nod in the affirmative.)

"THE COURT: All right. Mr. Lemburg, have you had an opportunity to completely and fully discuss the facts of this case with your attorneys, Mr. Sullivan and Mr. Pundt?

"THE DEFENDANT: Yes, I have.

"THE COURT: And I take it that you have also received their counsel and their advice—

"THE DEFENDANT: Yes.

"THE COURT: —in respect to this matter; is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: Are you satisfied—

"THE DEFENDANT: Yes.

"THE COURT: —with the representation that these men have given you in this matter?

"THE DEFENDANT: Very good lawyers.

"THE COURT: They're very good lawyers; I would agree with you. I do understand, Mr. Sullivan, that you have given your client some advice in this matter which he may not at this time be following; is that right?

"MR. SULLIVAN: That is correct, Your Honor.

"THE COURT: I'd like to have you make a complete statement of that at this time.

"MR. SULLIVAN: I've spoken at length with the defendant, so has Mr. Pundt. And both of us have advised the defendant not to change his plea to guilty as he is doing now. However, he has persisted in saying that this is what he wants to do. So we cannot stand in his way even though it's against our advice.

"THE COURT: You understand that your lawyers have advised you to not change your plea to guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: You also understand that this is your legal right, you don't have to follow your lawyers' advice if you don't want to.

"THE DEFENDANT: Yes.

"THE COURT: All right. I want to ask you another question, Mr. Sullivan. From conferring with your client are you satisfied that he has the necessary legal capacity to enter a plea of guilty?

"MR. SULLIVAN: I am, Your Honor.

"THE COURT: Are you so satisfied, Mr. Pundt?

"MR. PUNDT: Yes. Yes, I am.

"THE COURT: Mr. Lemburg, is there any question in your mind that you understand what you are doing?

"THE DEFENDANT: Yes, I understand.

"THE COURT: You do understand?

"THE DEFENDANT: Yes, I do."

█ Lemburg's voluntariness contention is bottomed on the due process clauses of the federal and state constitutions. Accordingly we must make our own evaluation of the totality of circumstances under which the postconviction court ruling was made. *Jackson v. Auger*, 239 N.W.2d 180, 182 (Iowa 1976); *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975). Upon our review of the totality of circumstances surrounding Lemburg's voluntariness claim we find his guilty plea was entered voluntarily.

We agree with the trial court's rejection of Lemburg's claim he was threatened by officers during his incarceration. We note especially the testimony of Kenneth Hach, Linn County deputy sheriff in charge of the Linn County jail at the time of Lemburg's incarceration. Hach testified he had no conversations with Lemburg, never threatened Lemburg, and that no members of the Linn County sheriff's department or Cedar Rapids police department ever threatened Lemburg or even talked to him. We believe this testimony to be true.

A review of Lemburg's claim he was handcuffed at the time of the guilty plea proceedings is somewhat more difficult. But we are inclined to doubt, as was Judge Vietor who accepted the plea, that Lemburg was handcuffed at the time. In any event, on this record, we do not believe any handcuffs impacted on the voluntariness of Lemburg's guilty plea. There is no indication being handcuffed could or did have any effect on Lemburg's willingness or desire against the advice of his counsel to enter his plea of guilty.

█ We reject Lemburg's contention he was not represented by counsel at the guilty plea proceedings because he chose to ignore the advice of his counsel in entering his plea.

We believe and hold this record fully complies with the *Sisco* requirements on voluntariness. The trial court interrogated the prosecutor, Lemburg's lawyer, and Lemburg himself regarding the plea bargain. He clearly outlined to Lemburg such an agreement was not technically binding on the court. He inquired of Lemburg whether anyone induced him to plead guilty by means of promises or threats and discussed with Lemburg and his attorney the matter of Lemburg's representation.

█ Our belief the *Sisco* requisite on voluntariness was complied with is supported by our holding in *Reaves*, supra, and in *Wallace*, supra. Under *Reaves* our review is focused on the defendant's awareness rather than on the trial court's colloquy. In *Wallace* there was a claim a guilty plea was involuntary because it was based on an undisclosed or misunderstood plea bargain. We held the important thing was what defendant *understood*, rather than what his attorney thought. Viewing the record in the instant case from the standpoint of Lemburg's awareness, and from the standpoint of what Lemburg knew, it is clear the *Sisco* voluntariness requisite was satisfied.

Lemburg's third assignment is without merit.

IV. Lemburg claims he received ineffective assistance of counsel in defending against the charge. This is a claimed violation of a basic constitutional safeguard.

Consequently we make our own evaluation of the claim under the totality of the circumstances. *Jackson v. Auger,* supra; *Rinehart,* supra, 234 N.W.2d at 658; *State v. Niccum,* 190 N.W.2d 815, 822 (Iowa 1971).

We reviewed the authorities for testing effective assistance of counsel in *Zacek v. Brewer,* 241 N.W.2d 41, 51 (Iowa 1976) and established the standard as that within the range of normal competency. See also *Ogden v. State,* 215 N.W.2d 335, 337–338 (Iowa 1974); *State v. Massey,* 207 N.W.2d 777, 780 (Iowa 1973). Our question is whether defense counsel's performance was within the range of normal competency.

■ Lemburg's claim his lawyers were incompetent arose after the proceedings. He told the judge who received his plea he was satisfied with the representation and considered them very good lawyers, an evaluation in which the trial court concurred.

The assignment rests on two contentions. First Lemburg contends his representation was inadequate because defense counsel failed to appeal from the guilty plea. Second Lemburg believes his representation was inadequate because defense counsel failed to obtain a psychiatric evaluation of him and failed to properly consider diminished capacity as a possible defense.

Looking at the entire record we believe both contentions are without merit. The appeal was not perfected on time because Lemburg delayed advising his counsel of his desire to appeal. When he wrote his request his attorney was vacationing in Europe. The failure does not reflect on the competency of his counsel, though it was the basis for our granting permission to take this delayed appeal.

Neither do we believe the record showed defense counsel did not consider the defenses of insanity or diminished capacity. We believe these matters were thoroughly considered. It was Lemburg's own decision to reject the possibilities of these defenses. There is nothing in the record to indicate Lemburg was represented by other than highly competent and dedicated counsel whose performance was well within the range of normal competency. His contention to the contrary is without merit.

■ V. Lemburg next argues the trial court erred in sentencing him immediately after receiving his guilty plea. This issue was not presented to the sentencing court. Neither was it presented to the trial court in the postconviction proceeding. Lemburg did not mention this contention in his petition for postconviction relief nor in the hearing. The postconviction trial court made no specific ruling on the point.

Issues not presented in the trial court cannot be raised for the first time on appeal. *State v. Nowlin,* 244 N.W.2d 596, 604 (Iowa 1976); *State v. Chase,* 234 N.W.2d 871, 873 (Iowa 1975).

■ VI. Lemburg separately complains of a matter he learned of at the postconviction hearing. Timothy S. White, the prosecutor who represented the State at the time Lemburg entered his plea, was called to testify. White's testimony revealed he had conversed out of defendant's presence with Judge Harold D. Vietor who expected to preside at Lemburg's trial. White's testimony indicated he was apprehensive of Lemburg's propensities toward violence and sought special security measures for the trial. Judge Vietor denied the request and mentioned the substance of the conversations to defense counsel.

Lemburg now argues that, because of the off-the-record discussions, Judge Vietor should have disqualified himself and not accepted his plea.

Without question a trial court should act impartially and neither initiate nor consider *ex parte* communications concerning a pending or impending proceeding. Canon 3 A(4), Code of Judicial Conduct. However we are not persuaded the discussions in any way affected Lemburg's rights or the trial court's ability to receive and consider his offer to plead guilty.

The discussions clearly showed they were limited to matters of security at Lemburg's expected trial. There is not the slightest hint the discussions in any way affected Judge Vietor's impartiality. The record

does not show any basis for Judge Vietor's disqualification even if one had been requested.

As none of Lemburg's contentions have merit the judgment of the trial court in both appeals must be and is hereby affirmed.

AFFIRMED.

MOORE, C. J., concurs.

REYNOLDSON, McCORMICK, and RAWLINGS, JJ., concur specially.

REYNOLDSON, Justice (concurring specially).

I concur specially because I cannot distinguish trial court's factual basis inquiry from that in *Ryan v. Iowa State Penitentiary, Ft. Madison,* 218 N.W.2d 616 (Iowa 1974), as the majority does in division II of its opinion. However, I agree this record adequately discloses trial court relied on an examination of the indictment and minutes of testimony.

McCORMICK, Justice (concurring specially).

I concur only in the result because I am unable to join the court's characterizations of *State v. Reaves,* 254 N.W.2d 488 (Iowa 1977), and *Wallace v. State,* 245 N.W.2d 325 (Iowa 1976). I adhere to the views expressed in my dissent in *Reaves* and concurring opinion in *Wallace.* However, I agree with the court that the record of the plea proceeding affirmatively establishes Lemburg's guilty plea was voluntary, intelligent and accurate under *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969), *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974), and *Ryan v. Iowa State Penitentiary,* 218 N.W.2d 616 (Iowa 1974). I agree with the view of Justice Reynoldson regarding compliance with *Ryan.*

RAWLINGS, J., joins in this special concurrence.